## BITUMINOUS CASUALTY CORPORATION v. LANCE BARTLETT.

240 N. W. 2d 310.

January 23, 1976—No. 45449.

*Maun, Hazel, Green, Hayes, Simon & Aretz* and *Geoffrey P. Jarpe,* for appellant.

*Kempf, Miller & Ticen* and *Thomas A. Miller,* for respondent.

Heard before Peterson, Kelly, and MacLaughlin, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Plaintiff insurer appeals from a judgment of the district court declaring that it must defend its insured on a counterclaim interposed against him in his lien foreclosure action. We reverse.

The facts are not in dispute. Plaintiff, Bituminous Casualty Corporation, issued a comprehensive general liability insurance policy to defendant, Lance Bartlett, a brick and masonry construction contractor.[1] That policy was in full force and effect at all relevant times.

---

[1] Bituminous had also issued a contractual liability policy to Bartlett. Counsel for Bartlett conceded at oral argument that the contractual policy applied only to a contract of indemnity and therefore was not relevant in this action. That policy obligates the insurer to defend actions and pay damages awarded by reason of contractual liability as-

Bartlett contracted to perform brick and masonry work on a new office building owned by Paul Johnson, doing business as A & C Johnson Co. After defendant had completed his work but had not been fully compensated, he filed a mechanic's lien statement and commenced an action to foreclose his lien against Johnson. Johnson interposed a counterclaim which contained the following clause:

"That the plaintiff negligently, carelessly and in an unworkman-like manner performed the masonry and cement work on the premises located at 8000 Humboldt Ave. So.; that said negligent and unworkman-like work has depreciated the building, all to this answering defendant's damage in the sum of One hundred Thousand and no/100 Dollars ($100,000.00)."

A deposition of Paul Johnson, which has been made a part of the record in this action, reveals two complaints which form the basis of the counterclaim: (1) Some of the bricks in the exterior walls of the building were chipped. Johnson testified that there were about 20 chipped bricks per square (100 square feet); that the chips were "big"; and that he had complained about them to Bartlett during the course of construction. (2) Certain of the exterior walls of the building were not built entirely straight and perpendicular, or "plumb," to the ground. Johnson testified that this alleged defect was also brought to Bartlett's attention during construction. Bartlett informed Johnson then and maintains now that it was necessary to run the walls out of plumb because precast concrete columns, which were placed by another contractor and for which he was not responsible, pushed a steel beam out of place. Both the chipped bricks and the out-of-plumb walls

_____

sumed by the insured "under any written contract of the type designated in the schedule for this insurance." The schedule specifies coverage for all written "CONSTRUCTION AGREEMENTS—Indemnification of owner or contractor." Since no contract indemnifying an owner or contractor is involved in this action, the policy is inapplicable and any obligation to defend must be found in the general comprehensive liability policy.

were contrary to standards of workmanship in the contract between Bartlett and Johnson. In dismissing the insurer's declaratory judgment action, the district court declared that the insurer was obligated to defend its insured on the counterclaim.

The insurer raises two issues on appeal: (1) Whether the facts set forth above constitute an insured "occurrence" within the scope of the liability insurance policy (2) whether those facts preclude coverage in view of several exclusions in the policy.

Defendant asserts, inter alia, that the insurer must defend its insured against any suit or claim when the allegations of such suit or claim are arguably within the policy coverage. This assertion is based on the following language in the policy involved:

"* * * and the company shall have the right and duty to defend *any suit* against the insured seeking damages on account of such bodily injury or property damage, even if *any* of the allegations of the suit are groundless, false or fraudulent * * *." (Italics supplied.)

We review some basic law concerning the nature of the insurer's obligation to defend its insured. The obligation to defend is contractual in nature and is generally determined by the allegations of the complaint against the insured and the indemnity coverage afforded by the policy. Republic Vanguard Ins. Co. v. Buehl, 295 Minn. 327, 332, 204 N. W. 2d 426, 429 (1973). However, the complaint is not controlling when actual facts clearly establish the existence or nonexistence of an obligation to defend. Crum v. Anchor Cas. Co. 264 Minn. 378, 119 N. W. 2d 703 (1963); Bobich v. Oja, 258 Minn. 287, 104 N. W. 2d 19 (1960); Weis v. State Farm Mutual Auto. Ins. Co. 242 Minn. 141, 64 N. W. 2d 366 (1954).[2] If any part of the cause of action against the insured arguably falls within the scope of coverage, the insurer must defend. Christian v. Royal Ins. Co. 185 Minn. 180,

---

[2] See, Annotation, 50 A. L. R. 2d 458 (allegations in complaint against insured as determining insurer's duty to defend).

240 N. W. 365 (1932).[3] Any ambiguity as to coverage at the pretrial stage is to be resolved in favor of the insured. As we said in Crum:

"Whether an insurer is under an obligation to defend is not always free from doubt until the case is actually tried. Such doubts should be resolved in favor of the insured." 264 Minn. 390, 119 N. W. 2d 711.

From the above authorities, it is apparent that an insurer seeking to avoid having to defend an insured carries the burden of demonstrating that all parts of the cause of action against the insured fall clearly outside the scope of coverage. If any part is arguably within the scope of coverage, the insurer should defend, reserving its right to contest coverage based on facts developed at trial on the merits. See, F. D. Chapman Const. Co. v. Glens Falls Ins. Co. 297 Minn. 406, 211 N. W. 2d 871 (1973).

The insurer contends that there was no "occurrence" and therefore a condition precedent to its duty to defend was unfulfilled. The insurance policy obligates the insurer to defend "any suit against the insured seeking damages on account of such * * * property damage, even if any of the allegations of the suit are groundless, false or fraudulent." The property damage referred to is defined as "injury to or destruction of tangible property" which is "caused by an occurrence." Occurrence, in turn, is defined as—

"* * * an *accident,* including injurious exposure to conditions, *which results,* during the policy period, *in bodily injury or property damage neither expected nor intended from the standpoint of the insured.*" (Italics supplied.)

[3] Cf. F. D. Chapman Const. Co. v. Glens Falls Ins. Co. 297 Minn. 406, 211 N. W. 2d 871 (1973). See also Annotation, 50 A. L. R. 2d 458, 506; Lee v. Aetna Cas. & Sur. Co. 178 F. 2d 750, 752 (2 Cir. 1949); Babcock v. Wilcox Co. v. Parsons Corp. 298 F. Supp. 898 (D. Neb. 1969) affirmed 430 F. 2d 531 (8 Cir. 1970); Maryland Cas. Co. v. Mitchell, 322 F. 2d 37, 39 (5 Cir. 1963).

For the purposes of this case, then, an occurrence requires: (1) An accident; (2) resulting in property damage; (3) neither expected nor intended by the insured contractor.

In Minnesota, the term "accident" as used in liability insurance has been defined in the landmark case [4] of Hauenstein v. St. Paul-Mercury Indemnity Co. 242 Minn. 354, 358, 65 N. W. 2d 122, 126 (1954):

"* * * Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." [5]

The 1966 revision of standard policy forms produced the definition of "occurrence" in the policy at bar. That definition refines the concept of accident by requiring that the damage resulting from accident be neither expected nor intended from the standpoint of the insured. To date, no Minnesota decision [6]

[4] Hauenstein v. St. Paul-Mercury Ind. Co. 242 Minn. 354, 65 N. W. 2d 122 (1954) has been favorably cited and applied by several courts. See, Western Cas. & Sur. Co. v. Polar Panel Co. 457 F. 2d 957, 961 (8 Cir. 1972) and cases cited; Goodyear Rubber & Supply Co. v. Great Am. Ins. Co. 471 F. 2d 1343, 1345 (9 Cir. 1973) and cases cited; Geddes & Smith, Inc. v. St. Paul Mercury Ind. Co. 51 Cal. 2d 558, 565, 334 P. 2d 881, 885 (1959).

[5] While this definition or a similar one is universally accepted by the courts, its application to particular facts has produced a quagmire of conflicting results and rationales. Some courts have held that use of the term "accident" or variations of it excludes from coverage the natural and probable consequences of negligent acts of the insured. Others have held that the term includes all negligently caused injury, provided such injury was not intentional. Annotation, 7 A. L. R. 3d 1262. While no case of this court clearly places Minnesota in either camp, see Larsen v. General Cas. Co. of Wisc. 99 F. Supp. 300 (D. Minn. 1951) affirmed 196 F. 2d 170 (8 Cir. 1952) (occurrence or mishap unintentionally caused is an accident within the plain meaning of that term).

[6] Although this court has commented that the term "occurrence" is broader than "accident," F. D. Chapman Const. Co. v. Glens Falls Ins. Co., *supra*, that case is distinguishable because the insurance policy

and few foreign decisions [7] have considered that definition in property damage situations. Two commentators have argued that the term should be interpreted broadly and that only highly expectable damage should be excluded from coverage. Hall, *Contractors' Liability Insurance for Property Damage Incidental to Normal Operations—The Standard Coverage Problem,* 16 U. of Kan. L. Rev. 181, 203 (arguing that policy framers did not intend a more restrictive interpretation); Keeton, *Insurance Law,* § 5.4(c), p. 300 (arguing that any other interpretation would conflict with coverage in automobile negligence cases).

These arguments are consistent with the relevant principles underlying this type of insurance coverage. A construction contractor's liability policy is designed to protect him from fortuitous losses occurring in connection with his work. If property damage occurs because of mistake or carelessness on the part of the contractor or his employees, he reasonably expects that damage to be covered. On the other hand, the insurer is in the business of distributing losses due to such property damage among a large number of policyholders. It is able to properly set premiums and supply coverage only if those losses are uncertain from the standpoint of any single policyholder. [8] If the single insured is allowed through intentional or reckless acts to consciously control the risks covered by the policy, a central concept of insurance is violated. The facts of the case at bar must be considered in light of these principles.

definitions of "occurrence" are different. The policy in Chapman did not include "accident" in the definition of "occurrence" as does the policy at bar.

[7] See, e. g., Grand River Lime Co. v. Ohio Cas. Co. 32 Ohio App. 2d 178, 289 N. E. 2d 360 (1972); Western Cas. & Sur. Co. v. Polar Panel Co. 457 F. 2d 957 (8 Cir. 1972) (existence of occurrence assumed).

[8] Denenberg, et al., in *Risk and Insurance* 146, puts it this way: "The occurrence of the event insured against must be fortuitous.

\* \* \* \* \*

"What the requirement anticipates is that the outcome of the event not be known in advance by the insured. One cannot insure against a certainty \* \* \*."

The insurer argues that any property damage resulting from the use of chipped bricks and the installation of out-of-plumb walls—both contrary to contract standards of workmanship—was expected from the standpoint of the insured. We agree. The record establishes that both of these alleged defects were patent, obvious, and called to the insured's attention during the course of construction. Therefore, any damage from them should have been expected by him.

As to the chipped bricks, the deposition testimony of Johnson establishes that they were "big," but that there were only about 20 chipped bricks per 100 square feet of wall. It also establishes that Johnson informed the insured during the course of construction that chipped bricks were being installed. Despite the relatively small number of chipped bricks, we cannot avoid the conclusion that the insured knew he was installing chipped bricks as he laid them. Big chips on bricks are a patent and obvious condition which is easily noticeable by the person who installs them. Furthermore, in view of contract specifications providing "[c]hipped or otherwise defaced brick will be rejected," the insured also knew that if he used such brick he could expect property damage to his work and a counterclaim against him for that damage.

As to the out-of-plumb walls, the conclusion that insured should have expected property damage is even more inescapable. Insured admits that the walls were intentionally run out of plumb, despite a contract specification that masonry units were to be run "plumb and true." He attempts to excuse this by arguing that he was forced to run the walls that way because of the defective work of another party. Whether this excuse is valid or not, we need not determine. The conclusion remains that a construction contractor who knowingly and intentionally violates a contract specification should expect property damage to result.

In summary, we regard any damage from the alleged defects in insured's work to be highly expectable from his standpoint. A contractor who knowingly violates contract specifications is

consciously controlling his risk of loss and has not suffered an occurrence. The absence of any occurrence clearly precludes coverage. Therefore, there is no obligation to defend.[9]

Reversed with directions to enter judgment that insurer is not obligated to defend its insured.

---

[9] Because we hold that there was no occurrence and hence no obligation to defend, we do not express any opinion on any of the variety of exclusions which the insurer claims also preclude coverage.