**OHIO CASUALTY INSURANCE COMPANY, Appellant,**

v.

**TERRACE ENTERPRISES, INC., Respondent,**

**Doerfler Construction Company, Inc., Respondent.**

No. 46790.

Supreme Court of Minnesota.

Aug. 26, 1977.

Rehearing Denied Jan. 4, 1978.

Jardine, Logan & O'Brien and Graham Heikes, St. Paul, for appellant.

John Daubney, St. Paul, for Terrace.

Johnson, Essling, Williams & Essling and David Essling, St. Paul, for Doerfler.

Heard before ROGOSHESKE, PETERSON, and KELLY, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Plaintiff, Ohio Casualty Insurance Company, appeals from a declaratory judgment entered in district court determining that its insurance policy affords coverage to damages arising from faulty construction of an apartment building. We affirm.

Defendants, Terrace Enterprises, Inc., and Doerfler Construction Company, Inc., are Minnesota corporations under Virgil Doerfler's sole ownership and control. Doerfler Construction contracts for the construction of buildings. Terrace Enterprises was to take title to two parcels of real estate in St. Paul and secure a construction loan to finance the building of an apartment complex. Virgil Doerfler originally acquired title to the land in an individual capacity. Subsequently, he and another individual, Joseph Lombardo, entered into an agreement to invest in and to share the risk of the construction of the apartment buildings.

After securing a construction loan, Terrace Enterprises contracted with Doerfler Construction to construct two 69-unit apartment buildings. Doerfler Construction retained the excavation and carpentry work and hired more than 15 subcontractors to aid in the construction. Twin City Testing

and Engineering Laboratory, Inc., was hired to test the soil at the site preparatory to construction. It recommended the project be stopped or slowed until the soil conditions improved for laying the footings and the foundation, and specifically warned of the need to protect the soil and concrete from freezing and of the danger of back filling over frozen soil.[1] Doerfler Construction proceeded with the work. Although it made efforts to protect the soil and concrete from the climate, its efforts were inadequate. In March 1973, the building had settled and threatened collapse. Twin City Testing traced the problem's cause to Doerfler Construction's failure to protect the work from the elements and to back fill adequately. It recommended that the shell of the building be lifted on jacks and the foundation replaced. This remedial work was performed in June, July, and August of 1973 at a cost of $37,128.23, and caused a 3-month delay in opening the building for occupancy.

After the project was completed, Terrace Enterprises brought an action against Doerfler Construction to recover the expenses it incurred in rectifying the faulty construction and for the losses occasioned by delay. The defense of the action was tendered by Doerfler Construction to its general liability insurer, Ohio Casualty, pursuant to a policy in force during the construction of the apartment building. Ohio Casualty rejected the tender, asserting its policy provided no coverage for the damages alleged, and brought this declaratory judgment action to determine coverage. The district court, sitting without a jury, found that the insurance policy covered the claims raised in the main action and that Ohio Casualty was obligated to defend.

Three issues are presented on appeal:

(1) Did the faulty construction of the apartment building constitute an "occurrence" within the terms of the insurance policy?

(2) Do exclusionary clauses in the policy exclude coverage of the claims which Terrace Enterprises has made against Doerfler Construction?

(3) Is Doerfler Construction entitled to reasonable attorneys fees for responding to this appeal?

1. Plaintiff argues that the faulty construction of the apartment building is not an "occurrence" for which it provides insurance coverage. An "occurrence" is defined in the policy as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." We recently had occasion to interpret this language in *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 240 N.W.2d 310 (1976). There, we held that intentional failure to conform to building specifications was not an "occurrence" covered by a comprehensive general liability insurance policy and stated:

"* * * A construction contractor's liability policy is designed to protect him from fortuitous losses occurring in connection with his work. *If property damage occurs because of mistake or carelessness on the part of the contractor or his employees, he reasonably expects that damage to be covered.* On the other hand, the insurer is in the business of distributing losses due to such property damage among a large number of policyholders. It is able to properly set premiums and supply coverage only if those losses are uncertain from the standpoint of any single policyholder. *If the single insured is allowed through intentional or reckless acts to consciously control the risks covered by the policy, a central concept of insurance is violated.*" 307 Minn. 78, 240 N.W.2d 313 (Italics supplied).

Doerfler Construction was aware, from its own knowledge and the soil report, of the dangers of freezing conditions. The company took precautions that failed to ad-

---

1. Back filling is the filling of trenches surrounding the cement footings and foundation with dirt.

equately protect the soil and concrete. Such conduct was perhaps negligent, but not reckless or intentional. Hence, the settling of the building was an "occurrence" within the terms of the policy.

2. Plaintiff argues that any of three exclusionary clauses in the policy eliminated coverage for the damages in question. The first clause excludes "property damage to * * * property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control."[2]

■ We have not interpreted this language, but other courts have construed this standard clause and have reached various results. A vast majority agree that the clause envisions possessory, not proprietary control. Annotation, 62 A.L.R.2d 1242, §§ 4, 5. But they disagree as to whether the clause is ambiguous or not. Annotation, 62 A.L.R.2d 1242, § 3[b]. The clause does not itself seem vague, apparently its clarity differs in the circumstances in which it is viewed. Compare, e. g., *Monari v. Surfside Boat Club, Inc.,* 469 F.2d 9 (2 Cir. 1972) (personal property; unambiguous), with *Harris, Jolliff & Michel, Inc. v. Motorists Mut. Ins. Co.,* 21 Ohio App.2d 81, 255 N.E.2d 302 (1970) (real property, ambiguous). The courts have fashioned a general rule that property is in the care, custody, or control of the insured when it is under his supervision and is a *necessary element* of the work involved. Hence, if the property damaged is *incidental* to the property upon which the work is performed by the insured, it is not within his care, custody, or control. E. g., *Meiser v. Aetna Casualty & Surety Co.,* 8 Wis.2d 233, 98 N.W.2d 919 (1959) (windows scratched while removing plaster which had inadvertently been splashed on them during plastering; windows were merely incidental to plasterer's work, policy exclusion held inapplicable).

Annotation, 62 A.L.R.2d 1242, §§ 6 to 8. Arguably, this distinction is a post hoc justification for a decision that turns on the facts of a specific case. *Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc.,* 66 N.J.Super. 478, 491, 169 A.2d 509, 516 (1961). Some courts have reached similar results by endeavoring to employ the purpose of the clause—i. e., elimination of the insurer as a guarantor of workmanship—to determine if the risk in question is contemplated therein. *Royal Indemnity Co. v. Smith,* 121 Ga.App. 272, 173 S.E.2d 738 (1970); *Hendrix Elec. Co. v. Casualty Reciprocal Exch.,* 297 So.2d 470 (La.App.1974); *Stewart Warner Corp. v. Burns Intl. Sec. Servs., Inc.,* 527 F.2d 1025, 1030 (7 Cir. 1975).

■ In construing an analogous exclusionary clause, we have noted "that * * whether * * * a party [has] dominion or control over the property of another * * is primarily a question of fact." *Knott v. Soltau,* 283 Minn. 25, 30, 166 N.W.2d 91, 94 (1969). Rather than adopt a rigid test for determining "care, custody or control," we will examine the circumstances in this case in light of the following factors: (1) Whether the property is realty or personalty; (2) the location, size, shape, and other characteristics of the property; and (3) the insured's duties with respect to the property as a whole, the property damaged, and other workers.[3] See, *Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc., supra;* Mustachio, *Manufacturers' and Contractors' Liability Insurance Policy: The Care, Custody, or Control Exclusion Clause,* 6 Houston L.Rev. 359, 364 (1968). This examination yields no ready answers but perhaps it makes explicit the factors salient to a determination of coverage under the exclusionary clause.

In this case, the property is realty, a factor favoring coverage. As the court stated in *Goswick v. Employers' Casualty Co.,* 440 S.W.2d 287, 290 (Tex.1969):

> *Co. v. Smith,* 121 Ga.App. 272, 275, 173 S.E.2d 738, 740 (1970). We do not examine the insured's interest here because of the first two clauses of this exclusion, see, footnote 2, *supra,* and the insurer's failure to raise them.

2. This clause is preceded by two clauses excluding coverage for damages to "(1) property owned or occupied by or rented to the insured; [or] (2) property used by the insured."

3. The insured's interest in the property may also be relevant. See, e. g., *Royal Indemnity*

"Only rarely has the exclusion been applied to realty * * *. * * * The courts have refused to extend the insured's work on a specific item of property into care, custody or control of the building or surrounding area."

Second, the apartment complex was built on another's land and consists of two large buildings. These factors lessen the likelihood that Doerfler Construction had the property within its care, custody, or control.

The third factor is a matter of some contention. Ohio Casualty asserts that Doerfler Construction was the general contractor for the project, while Terrace Enterprises and Doerfler Construction nominate Virgil Doerfler in his individual capacity. Evidence supports each party's identification. The district court, however, did not make a finding on the issue nor is the construction contract in evidence. Instead of relying on the designations assigned to the parties, we appraise the duties performed by them. Doerfler Construction graded and excavated the land, dug the trenches for the outside footings, back filled the trenches after the footings were poured, and did the carpentry work necessary to construct the shell of the building. It also hired more than 15 subcontractors to do the other work on the building. Other mechanical and cement contractors worked on the site before and during the laying of the foundation. Having once selected the subcontractors, Doerfler Construction had no control over the manner in which they performed their work. Doerfler Construction had a foreman on the site only when it was performing work, and only to supervise that work. Virgil Doerfler individually had someone check the progress of the work for 10 minutes each day. Doerfler himself checked the site every other day.

It appears that Doerfler Construction did not have care, custody, or control over the building as a whole, that other contractors not under its supervision were entrusted with performing the work Doerfler Construction did not retain.[4] Yet, in failing to back fill adequately and protect the soil and concrete from the cold, the company was the cause of faulty work that damaged the entire building. In this circumstance, the exclusionary clause is inapplicable, for Doerfler Construction did not have care, custody, or control of the property damaged.

The second exclusionary clause advanced by plaintiff states: "This insurance does not apply: * * * (m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." The controversy here centers on the initial part of the clause, i. e., whether the property damaged was work performed by Doerfler Construction.

This court construed a predecessor of this clause in *Hauenstein v. St. Paul-Mercury Indemnity Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954). The clause interpreted there excluded "injury to or destruction of * * any goods or products manufactured, sold, handled, or distributed by the Insured * * *." 242 Minn. 356, 65 N.W.2d 124. The insured was a supplier of a new plaster, which when used by the contractor shrunk and cracked, requiring removal and replastering. The court had to determine whether the building was damaged by the defective plaster, apart from damage to the plaster itself:

"* * * It is undisputed that after this new type of plaster had been applied it shrunk and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. No one can reasonably contend that the application of a useless plaster,

---

4. Some courts have suggested that an insured must possess exclusive control over property before it is within his control. E. g., *Stewart Warner Corp. v. Burns Intl. Sec. Servs., Inc.*, 527 F.2d 1025 (7 Cir. 1975) (night watchman set fire to warehouse, exclusion applicable); *A.*

*T. Morris & Co. v. Lumber Mut. Cas. Ins. Co.*, 163 Misc. 715, 298 N.Y.S. 227 (1937) (subcontractor's workmen working in movie theater damaged the ceiling when they walked on the roof; exclusion inapplicable since subcontractor did not have exclusive control of theater).

which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser." 242 Minn. 357, 65 N.W.2d 125.

Accord, *Western Casualty & Surety Co. v. Polar Panel Co.*, 457 F.2d 957 (8 Cir. 1972).

The logic of *Hauenstein* mandates against exclusion of coverage here. The footings unsoundly secured by Doerfler Construction not only lowered the market value of the apartment building, but threatened its demise as well. The building as a whole was not the work performed by the insured, and thus the damage to it as a whole is not excluded by clause (m).

■ The final exclusionary clause which plaintiff relies on states:

"This insurance shall not apply:

\* \* \* \* \* \*

"(n) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein."

This clause is relevant to the damages Terrace Enterprises seeks from Doerfler Construction for the 3-month delay in opening the apartment building.

Unlike the other clauses, this provision has not been subject to extensive judicial exposure. Yet the authorities that exist suggest its inapplicability here. In *Gulf Ins. Co. v. Parker Products, Inc.*, 498 S.W.2d

676, 678 (Tex.1973), the court discussed the origin of the clause:

" \* \* \* We find no cases construing this relatively new policy provision, but it is discussed in 2 Long, Law of Liability Insurance, App. § 15 (1966). The provision is there referred to as the 'sistership exclusion' and is explained as follows:

'It denies coverage for claims based upon the cost of withdrawing a product from the market, replacing a product or the loss of use of a product which is temporarily or permanently withdrawn from the market because of occurrences involving the same or a similar product. The name derives from an occurrence in the aircraft industry where all airplanes of a certain make and type were grounded by an order of the Civil Aeronautics Administration because one crashed and others were suspected of having a common structural defect. The damages arising out of the loss of use of all the sister ships were enormous.

'The recall of equipment or parts discovered to have a common fault involve expenses incurred to prevent accidents which have not occurred. While the insurance covers damages for bodily injuries and property damage caused by the product that failed, it was never intended that the insurer would be saddled with the cost of preventing other failures, any more than it was intended that the insurer would pay the cost of preventing the first failure if the product had been discovered to be in a dangerous condition before the occurrence.' "

The apartment building in question was not withdrawn from the market because of a suspected defect or a defect in another building. It was withdrawn because it was damaged by defective construction. Thus, exclusion (n) is inapplicable. *Gulf Ins. Co. v. Parker Products, Inc., supra.*

■ 3. Doerfler Construction seeks reasonable attorneys fees for having to respond to Ohio Casualty's appeal. The policy provides that the insurer "will pay in addition to the applicable limit of liability \* \* (d) reasonable expenses incurred by the in-

sured at the company's request * * *." Pursuant to *Security Mutual Casualty Co. v. Luthi,* 303 Minn. 161, 170, 226 N.W.2d 878, 884 (1975), the district court awarded Doerfler Construction reasonable attorneys fees for defending the declaratory judgment action in that court. See, also, *Continental Western Ins. Co. v. Toal,* Minn., 244 N.W.2d 121, 126, note 5 (1976).

Having concluded that defending a declaratory judgment action to determine coverage is a "reasonable expense incurred by the insured at the company's request" within the standard language of insurance policies, we perceive no reason for refusing to award reasonable attorneys fees when an insured, successful below, must respond to an unsuccessful appeal brought by his insurance company. The rationale against burdening the insured with an expense he contracted to avoid is as applicable in the context of an appeal as it is in the defense of the suit at trial.

Doerfler Construction is entitled to $450 as reasonable attorneys fees in connection with this appeal.

Affirmed.