Ivar E. JOHNSON, Appellant,

v.

AID INSURANCE COMPANY OF DES MOINES, IOWA, d.b.a. AID Insurance Services, Respondent.

No. 49276.

Supreme Court of Minnesota.

Jan. 11, 1980.

Robert H. Meier, St. Paul, for appellant.

Lommen, Cole & Stageberg and Thomas E. Peterson, Minneapolis, for respondent.

WAHL, Justice.

Plaintiff Ivar E. Johnson, a building contractor, sought a declaratory judgment that his comprehensive liability insurance carrier, defendant AID Insurance Company

(AID), was under a duty to defend him in a suit brought against him for breach of a construction contract.[1] AID denied that the alleged contract specification violations constituted an "occurrence" which fell within the coverage provided by the policy. The Carver County District Court found no coverage and granted AID's motion for summary judgment. We affirm.

On August 9, 1973, plaintiff Johnson, a general construction contractor, entered into a written contract with Julius C. Smith and Mary A. Smith to build the Smiths a home. The Smith house was to be constructed in accordance with "detailed architectural plans and specifications." On June 2, 1977, the Smiths served on Johnson a summons and complaint alleging that Johnson had not met his obligations under the construction contract and cataloging "numerous and flagrant deficiencies" in the construction of their home, for which they sought reimbursement. The complaint charged that the house was marred by "major structural defects," "major departures from the design requirements," and "poor quality" of workmanship and that, despite numerous complaints from the Smiths, Johnson "failed and neglected" to "complete the said construction or to correct the defects" in the work he had already completed.

Under Johnson's general liability policy with AID, AID agreed to pay, and to defend Johnson in suits against him seeking, damages because of "property damage * * to which this insurance applies, caused by an occurrence * * *." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in * * * property damage neither expected nor intended from the standpoint of the insured."

We must decide whether AID correctly refused Johnson's tendered defense on the ground that the events in the underlying action did not constitute an "occurrence" resulting in property damage. Because we find this issue to be determinative, we do not consider AID's arguments that coverage is specifically denied by the policy exclusions.

The coverage provided by AID, for an "occurrence" resulting in "property damage neither expected nor intended from the standpoint of the insured," is standard liability policy language. Identical language was construed by this court in *Bituminous Casualty Corp. v. Bartlett,* 307 Minn. 72, 240 N.W.2d 310 (1976). In *Bituminous,* the defendant insured had contracted to do brick and masonry work on a new office building. The building owner refused to pay for the work and alleged in a counterclaim that "[Bartlett] negligently, carelessly and in an unworkman-like manner performed the masonry and cement work" and that the building had depreciated as a result. 307 Minn. at 74, 240 N.W.2d at 311. The owner prayed damages for this depreciation, and Bartlett tendered the defense of the claim to his general liability insurer, plaintiff Bituminous, who refused to defend, arguing that there was no "occurrence" as required by the policy. At the hearing on the declaratory judgment action brought by Bituminous, the building owner testified that 20 percent of the bricks Bartlett placed in the exterior walls of the building were "chipped," that the walls were "out of plumb," and that these conditions violated the standards of workmanship contracted by the parties.

Defining an "occurrence" to require (1) an accident, (2) resulting in property damage, (3) neither expected nor intended by the insured contractor, 307 Minn. at 77, 240 N.W.2d at 312, we held that the results of obvious violations of contract standards of workmanship are not "unexpected" and

---

1. In the court below, plaintiff sought a declaratory judgment that AID was under an obligation to defend Johnson in the Smith action, was liable for any damages won by the Smiths, and must pay reasonable attorneys fees for the bringing of this declaratory judgment action. However, counsel for plaintiff indicated at oral argument that the only relief which plaintiff seeks in this court is legal defense in the underlying action. Johnson having settled the claim with the Smiths, a decision in his favor in this court would result only in an award to him of attorneys fees in the court below and in this court and his costs in bringing this action.

that Bartlett was not covered for such results. "A construction contractor's liability policy is designed to protect him from fortuitous losses occurring in connection with his work." Because the defects were obvious and had been called to the insured's attention, Bartlett was "consciously controlling his risk of loss," had not suffered an unexpected "occurrence," and was not entitled to a defense. 307 Minn. at 78, 79–80, 240 N.W.2d at 313, 314.

In *Ohio Casualty Ins. Co. v. Terrace Enterprises, Inc.,* 260 N.W.2d 450 (Minn.1977), we distinguished *Bituminous,* and held that the settling of an apartment building resulting from faulty construction that was "perhaps negligent, but not reckless or intentional" did constitute an "occurrence." [2] In *Ohio Casualty,* the insured building contractor was warned by an engineer subcontractor that the soil at the building · site needed added protection from freezing. The insured contractor "made efforts to protect the soil and concrete from the ·climate," but those efforts proved inadequate. Noting that some precautions had been taken, we found an "occurrence" within ·the policy terms. A contractor's mistake or · carelessness is covered; but an insured will not be allowed through intentional or reckless acts to consciously control the risks covered by the policy. 260 N.W.2d at 452.[3]

▉ The Smiths' case against Johnson sought damages for conscious faulty workmanship, not for damages resulting from miscalculations or negligence. Their complaint alleged grossly, obviously defective workmanship, and alleged that the Smiths complained to Johnson about the defects "repeatedly." Johnson's counsel himself at oral argument referred to the Smith lawsuit as one for "improper performance of his construction contract," conceded that "this involves an operation that was never completed," and stated that he had personal knowledge that the allegations of the Smith complaint "are true, including such things as the drainage of the septic system onto the living room floor .* * *." In these circumstances, we cannot characterize the events of which the Smiths complain as "mistake or carelessness" on Johnson's part. We find *Bituminous* controlling, as did the trial court. An insured contractor's willful and knowing violations of contract specifications and expected standards of workmanship do not establish an "occurrence," as defined in the AID liability policy.

▉ In so holding, we caution that while a liability insurance carrier may initially rely on the allegations of the underlying complaint to determine whether it must provide its insured with a defense, it may not rely on that determination, without investigating the facts, once the insured has come forward and made some factual showing that the suit is actually one for damages resulting from events which do fall into policy terms. If any part of the cause of action against its insured is arguably within the scope of coverage, the insurer must provide a defense. *Prahm v. Rupp Construction Co.,* 277 N.W.2d 389 (Minn.1979). In the case before us, the insured produced no such evidence, and plaintiff himself initially moved for summary judgment. There being no evidence before the trial judge which would raise a question of fact concerning the events which resulted in the Smiths' lawsuit, the court properly granted summary judgment in favor of the insurer.

Affirmed.

**2.** There is general agreement that the mere fact that damages or loss resulted from the "ordinary" negligence of the insured does not necessarily exclude resulting liability from the coverage of policies which insure against liability for damage caused by "accident." Annot. 7 A.L. R.3d 1262 (1966); *Larsen v. General Casualty Co.,* 99 F.Supp. 300 (D.Minn.1951) (damage · from fire resulting when employee of oil burner service company negligently reassembled furnace connection was covered by company's liability policy which required "accident" to trigger coverage); *Royal Indemnity Co. v. Kuhr,* ·113 Ga.App. 39, 147 S.E.2d 23 (1966) (insurer liable for damage resulting when insured's employee removed part of roof for weatherstripping and negligently left opening uncovered during rain).

**3.** In fact, the word "negligence" appears nowhere in the Smith complaint.