## FARMERS UNION OIL COMPANY, Appellant,

v.

## MUTUAL SERVICE INSURANCE COMPANY, Respondent.

### No. CX–87–2507.

Court of Appeals of Minnesota.

May 3, 1988.

Stephen Torvik, Montevideo, for appellant.

Gordon Hansmeier, St. Cloud, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and SCHULTZ and FLEMING, JJ.*

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

CRIPPEN, Judge.

Farmers Union Oil Company ("Farmers Union") appeals from a declaratory judgment finding that Mutual Service Insurance Company ("MSI") was not obligated under a liability insurance policy to defend them in a lawsuit.

## FACTS

In July 1985, Roger Tostenson, a Swift County farmer, contacted Farmers Union, an agricultural cooperative. He requested that the cooperative spray 268 acres of his corn with Poast herbicide mixed with 2–4–D and oil, in an effort to control a wild proso millet weed problem he was having.

Tostenson was told by Ernie Christianson of Farmers Union that Poast was "off label" as to corn, which means that it was not federally approved for corn application. Tostenson responded that he used Poast previously for wild proso millet control on a corn crop with good results, and that a drop nozzle method would prevent chemical exposure to the corn leaves. Christianson said that he told Tostenson "there was the chance" that the mixture would kill corn. Christianson also said he knew it was illegal to use herbicides "off label;" Poast was an Environmental Protection Agency registered product and it is a violation of federal law to use the product inconsistent with its label. Christianson agreed to spray Poast on Tostenson's corn, but evidence shows that Tostenson was first told that the cooperative would not be responsible for any ill effects to the corn.

Several weeks after the application of the spray, damage to Tostenson's corn became apparent. Tostenson sued Farmers Union, and the summons and complaint was tendered to MSI. The complaint alleged that Farmers Union "negligently, carelessly, recklessly and unlawfully" applied an herbicide and crop oil to crops owned by Tostenson. MSI declined coverage on the basis there was no "occurrence" within the terms of the policy, and Farmers

Union instituted the declaratory judgment action.

The trial court determined there was no coverage to Farmers Union from MSI for the claim. In its memorandum, the court found that "no damage of any sort was *intended*," but that coverage could still be excluded if damage was highly expected by the insured (emphasis added). The court stated:

> In the current case, the insured had full access to product use instruction and knew for a fact that the requested use was an "off-label" application. Farmers Union employees knew the requested herbicide was often used to kill the crop now being claimed as a loss. The resultant damage should have been *highly expected* and a contrary belief is absurd in light of the admitted knowledge of the insured. * * * The knowledge of the insured implies a high expectation of crop damage that is not an occurrence under the insurance policy now at issue.

(Emphasis added). Further, the court found that the dispute has "none of the factors justifying reformation based upon reasonable expectations." Farmers Union appeals.

### ISSUE

Does a policy exclusion for damage "expected or intended" spare the insurer from defending a suit against the insured?

### ANALYSIS

#### I.

Farmers Union did not make post trial motions for amended findings or a new trial. There was no testimony taken at trial; the parties submitted the case by stipulated facts and supplementary documentary evidence pursuant to the trial court's request. Thus, this court is to review de novo. *See Northern States Power Co. v. Williams*, 343 N.W.2d 627, 630 (Minn.1984) ("where a trial judge decides a fact issue on the basis of affidavits alone, the supreme court may disregard the findings of the trial judge and review the documentary evidence de novo.").

An insurer's obligation to defend is contractual in nature and is determined by examining the complaint and the policy coverage. *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 390 (Minn.1979). The insurer must defend if a part of the cause of action is arguably within the scope of coverage. *Id.* "[W]hen the language of an exclusionary clause to an insurance policy is ambiguous, any doubts to its meaning should be resolved in favor of the insured and against the insurer who drafted the policy." *Caspersen v. Webber*, 298 Minn. 93, 98, 213 N.W.2d 327, 330 (1973).

The plaintiff, Roger Tostenson, alleged that Farmers Union, "negligently, carelessly, recklessly, and unlawfully" applied an herbicide and crop oil which resulted in damage to his corn. Because the complaint stated a negligence claim, defense of the action was tendered to Farmers Union liability insurance carrier, MSI. MSI declined coverage.

■ The insurance agreement provides coverage:

> for damage resulting from an *occurrence* arising out of the application of agricultural chemicals. This includes a reduction in yield of agricultural crops arising out of the application of an improper amount or improper type of agricultural chemical.

Specifically, the policy defines occurrence as:

> an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured.

(Emphasis added).

The question is whether appellant's spraying activities for Roger Tostenson constituted an occurrence as defined in the policy. The legal standard to apply in this case was introduced in *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 240 N.W.2d 310 (1976), *overruled on other grounds, Prahm v. Rupp Construction Co.*, 277 N.W.2d 389 (Minn.1979). In *Bituminous*, the Minnesota Supreme Court held that a contractor's intentional failure

to conform to building specifications was not an "occurrence" covered by a comprehensive general liability insurance policy. 307 Minn. at 79–80, 240 N.W.2d at 313–14. The court stated:

> A construction contractor's liability policy is designed to protect him from fortuitous losses occurring in connection with his work. If property damage occurs because of mistake or carelessness on the part of the contractor or his employees, he reasonably expects that damage to be covered. On the other hand, the insurer is in the business of distributing losses due to such property damage among a large number of policyholders. It is able to properly set premiums and supply coverage only if those losses are uncertain from the standpoint of any single policyholder. If the single insured is allowed through *intentional or reckless* acts to consciously control the risks covered by the policy, a central concept of insurance is violated.

*Id.* at 78, 240 N.W.2d at 313 (footnotes omitted) (emphasis added). The court concluded that "any property damage resulting from the use of chipped bricks and the installation of out-of-plumb walls—both contrary to contract standards of workmanship—was expected from the standpoint of the insured." *Id.* at 79, 240 N.W. 2d at 313.

In *Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.*, the court held that where a construction company was "aware" from its own knowledge and a soil report of the dangers of freezing conditions, and where it took precautions that failed to adequately protect the soil and concrete, its conduct was "perhaps negligent, but not reckless or intentional." 260 N.W.2d 450, 453 (Minn.1977). *Cf. Johnson v. AID Insurance Co.*, 287 N.W.2d 663, 665 (Minn.1980) (where an insured contractor willfully and knowingly violated contract specifications and established standards of workmanship, there was not an "occurrence" as defined in the policy).

The trial court in this case found that "no damage of any sort was intended." The court found, however, that the "knowledge of the insured implies a high expectation of crop damage that is not an occurrence under the insurance policy now at issue."

The labeling materials of Poast caution against contact with corn; it is "off label" for corn spraying, meaning the application was in violation of federal law. Ernie Christianson of Farmers Union knew of the hazard and warned Tostenson about the Poast application, wanting assurance from him that he would not hold Farmers Union liable for any resulting damage.

Appellant argues that Tostenson said that Poast was safe to use on corn, and that the process used in spraying Tostenson's crops was aimed at avoiding harm to standing corn. Appellant also suggests that the company and others were performing tests on Poast, and that representatives of the cooperative were genuinely surprised when the crops were damaged. The subjective views of the insured were noted by the trial court, which found that crops were not intentionally damaged because the herbicide application was not "inherently likely" to do harm. These observations eliminate intent, but not recklessness. The record indicates Farmers Union knew of the substantial risks involved, proceeded in light of this knowledge, and disregarded the known hazard.

We note that Tostenson in his lawsuit alleged simple negligence of Farmers Union as well as reckless and unlawful conduct. The obligation of the insurer to defend arises if part of the cause of action is covered. *Bituminous Casualty Corp.*, 307 Minn. at 76, 240 N.W.2d at 312. Supreme Court decisions establish that the nature of the cause of action is separately determined to decide if it constitutes an insured occurrence, independent of the way the claim is characterized in the underlying lawsuit. *See id.* at 75, 240 N.W.2d at 312. Here, appellant's application of Poast was reckless; the court properly found that MSI need not defend Farmers Union in the Tostenson lawsuit.

## II.

At trial, appellant alternatively argued to the trial court that coverage should

be imposed on the basis of the reasonable expectations of the insured. *See Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271 (Minn. 1985) (an insured could reasonably expect to be covered for loss from a burglary performed by a thief having skill to do the job without leaving signs of forcible entry).

The trial court found that *Atwater* did not excuse the insured from "reading his policy and does not permit modification based on interpretation of phrases taken out of context." Appellants argue that Farmers Union could have reasonably expected that it had coverage for the loss and that Wally Lutz, the manager of Farmers Union, expected that the loss would be covered.

"The fact that an unambiguous policy does not meet the intent of the purchaser is no reason for altering the policy to effectuate that intent, except in certain cases as contemplated in *Atwater.*" *Morris v. Weiss,* 414 N.W.2d 485, 489 (Minn.Ct.App. 1987). We agree with the trial court's conclusion that the doctrine of reasonable expectations does not apply. The facts in this case do not present an equitable situation creating reasonable expectations' to find coverage for the insured.

### DECISION

There was no occurrence within the meaning of the subject insurance policy and no obligation for the insurer to defend the suit against appellant. The operative policy provision in this case does not create terms which trigger the reasonable expectations doctrine.

Affirmed.