**RED LAKE COUNTY STATE BANK and O.P. Gjerdingen, Appellants,**

v.

**EMPLOYER'S INSURANCE OF WAU-SAU, a Mutual Company, Appellee.**

No. 88–5160.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1988.

Decided May 10, 1989.

Kenneth F. Johannson, Crookston, Minn., for appellants.

Louis G. Roberts, Joanne Johns, Chicago, Ill., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and HARPER,* Senior District Judge.

McMILLIAN, Circuit Judge.

Red Lake County State Bank (bank) and O.P. Gjerdingen, (collectively, appellants), appeal from a final judgment entered in the District Court[1] for the District of Minnesota after a bench trial, holding that Employer's Insurance of Wausau (Employer's) had no duty to defend the bank in a lawsuit

brought against it by a bank customer and denying appellants' claim for attorney's fees made under the terms of a Bankers Special Bond (bond) issued to the bank by Employer's.

For reversal, appellants argue that (1) there was an ambiguity as to coverage which the district court incorrectly resolved against them; and (2) the allegations against them in the lawsuit stated a claim that, if true, would have constituted a collectible loss under the terms of the bond thereby triggering the attorney's fees provision of the bond. For the reasons discussed below, we affirm the judgment of the district court.

On March 21, 1984, Arlynn Seaton instituted a lawsuit in Minnesota state court against appellants alleging that Gjerdingen, acting in his capacity as bank president, forged Seaton's signature on a mortgage deed and promissory note which purported to make Seaton and Seaton's business, Seaton Leasing, Inc., liable to the bank for $146,113.55. The prayer of Seaton's complaint requested injunctive relief, compensatory and punitive damages, and attorney's fees and costs. In October 1984 the bank was granted summary judgment on the debt owed to it by Seaton. *Order*, No. C–84–85 (9th Dist.Minn. Oct. 29, 1984). In November 1984 Seaton's claim against Gjerdingen was tried to a jury resulting in a jury verdict in Gjerdingen's favor. Based upon a term in the promissory note regarding the payment of attorney's fees and the costs of collection, the bank moved for and received an order awarding it attorney's fees, costs, and disbursements of $19,940.56 against Seaton. *Order*, No. C–84–85 (9th Dist.Minn. Dec. 10, 1984). Gjerdingen was also awarded the costs and disbursements he incurred in defending the Seaton lawsuit. *Order*, No. C–84–85 (9th Dist.Minn. Nov. 26, 1984).[2]

* The Honorable Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. The state court order does not specify what dollar amount was awarded to Gjerdingen by

the Minnesota court, however, in his federal complaint, Gjerdingen claims that he incurred reasonable attorney's fees of $7,920.89. The bank claims that it incurred reasonable attorney's fees of $26,443.65 with no explanation of the discrepancy between this amount and the amount actually awarded to it by the Minnesota court.

After Seaton initiated the lawsuit against appellants, the bank tendered defense of the action to Employer's. Gjerdingen did not formally tender defense to Employer's; however, he did tender defense of his case to attorneys representing the bank. Employer's did not accept the bank's tender on the grounds that the acts complained of in the underlying lawsuit did not engage the coverage of the bond and, therefore, the attorney's fees provision of the bond did not extend to the costs incurred by appellants in defending the Seaton lawsuit.

On September 26, 1985, appellants instituted a lawsuit for attorney's fees against Employer's in the United States District Court for the District of Minnesota. The district court dismissed the complaint with prejudice and entered judgment in favor of Employer's. *Red Lake County State Bank v. Employer's Ins.*, No. 4–85–1484 (D.Minn. Mar. 18, 1988). This appeal followed.

Appellants argue that the district court erred in dismissing their complaint because there was an ambiguity as to whether the acts complained of in the Seaton lawsuit were covered by the provisions of the bond. Ambiguities as to coverage must be resolved in favor of the insured, and "[i]f any part of the cause of action against the insured arguably falls within the scope of coverage, the insurer must defend." *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 240 N.W.2d 310, 312 (1976) (*Bituminous*), *overruled on other grounds by Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 391 (Minn.1979) (citations omitted).

Appellants argue that the acts complained of in the Seaton lawsuit were arguably within the scope of Coverages 1 and 12 of the bond. Appellants contend that Coverage 18 of the bond was therefore triggered, and Employer's must reimburse them for the attorney's fees and costs they incurred in defending the Seaton lawsuit. Coverage 18 of the bond, titled "Court Costs and Attorney's Fees," provides for reimbursement of court costs and reasonable attorney's fees paid by the insured "in defending any suit or proceeding brought by others against the [i]nsured to enforce

the [i]nsured's liability for any loss *which, if established against the [i]nsured, would constitute a valid and collectible loss ... payable under the terms of this bond.*" (emphasis added).

Coverage 1 of the bond, titled "Employee Dishonesty," covers any "loss resulting directly from one or more dishonest or fraudulent acts of an Employee ... whether or not the [i]nsured is liable" for such loss provided, however, that "dishonest or fraudulent acts as used in [Coverage 1] shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent to cause the [i]nsured to sustain such loss; and to obtain financial benefit for the Employee, or any other person or organization intended by the Employee to receive such benefit...."

Coverage 12 of the bond, titled "All Risk Forgery" covers any "loss by reason of the [i]nsured having in good faith and in the usual course of business, ... extended any credit ... or otherwise acted upon any security, document, or other written instrument which proves to have been forged or altered...."

In dismissing the complaint, the district court ruled that the allegations made by Seaton in the underlying lawsuit would not, if proved, have "constitute[d] a valid and collectible loss ... payable under the terms of [the] bond." The district court held that "the provisions of [C]overage 18 do not require the defendant to either provide a defense or pay the cost of defense unless the conditions set forth in that paragraph are met." *Slip op.* at 6. Because the condition requiring that a valid and collectible loss be alleged against the insured was not met, the district court held that Employer's had no duty to defend appellants in the Seaton lawsuit. We agree.

Appellants correctly state the general rule that the duty to defend "is generally determined by the allegations of the complaint against the insured and the indemnity coverage afforded by the policy," *Bituminous*, 240 N.W.2d at 312 (citing *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426, 429 (1973)); and ambiguities as to coverage should be re-

solved in favor of the insured. *Bituminous*, 240 N.W.2d at 312 (citing *Crum v. Anchor Casualty Co.*, 264 Minn. 378, 119 N.W.2d 703, 711 (1963) (*Crum*). However, the allegations of the complaint are "not controlling when actual facts clearly establish the existence or nonexistence of an obligation to defend." *Bituminous*, 240 N.W.2d at 312 (citing *Crum; Bobich v. Oja*, 258 Minn. 287, 104 N.W.2d 19 (1960); and *Weis v. State Farm Mutual Auto Ins. Co.*, 242 Minn. 141, 64 N.W.2d 366 (1954)). *See also Farmers & Merchants State Bank v. St. Paul Fire & Marine Ins. Co.*, 309 Minn. 14, 242 N.W.2d 840, 843 (1976) (*Farmers*) ("if the insurer has knowledge from facts dehors the complaint that the acts giving rise to the suit are outside the coverage of the policy, there is no duty to defend").

In the present case, the district court reasoned that the allegations of the Seaton complaint, if proved, did not state a claim that would be covered by Coverage 1 of the bond, "Employee Dishonesty," because "the alleged acts of Gjerdingen were not done with the manifest intent to cause a loss to the [b]ank and obtain financial interest for the [b]ank or Gjerdingen himself." *Slip op.* at 5. We agree.

While it may be assumed that if Gjerdingen had forged the mortgage deed and promissory note, he would not have done so in order to cause a loss to the bank, it may also be safely assumed that forgery of documents purporting, to make an individual and his business liable to the bank for $146,113.55 would be done with the manifest intent to obtain financial benefit for the bank. However, the language of Coverage 1 is stated in the conjunctive so that Gjerdingen would have had to intend both to cause a loss to the bank *and* to benefit himself or someone else. The facts alleged in the Seaton complaint do not give rise to such an inference because a forgery of the type alleged could only be done with the intent to benefit the bank.

The district court did not, however, rest its decision solely on the above reasoning. Even more persuasive was its ruling that Minnesota law did not allow recovery of attorney's fees by appellants because Gjerdingen, as 92% shareholder, was effectively the owner of the bank. In addition to owning 92% of the bank's stock, Gjerdingen was president, chief operating officer, and director of the bank.

The district court correctly applied Minnesota law to the facts of this case, and we will not disturb its ruling on this issue. *See W.B. Farms v. Fremont Nat'l Bank & Trust Co.*, 756 F.2d 663, 666 (8th Cir.1985) (on questions of state law, court of appeals will "normally defer to the knowledge and experience of a district judge sitting in the state whose law is involved ... unless it is 'deficient in analysis or otherwise lacking in reasoned authority' ") (quoting *Ancom, Inc. v. E.R. Squibb & Sons, Inc.*, 658 F.2d 650, 654 (8th Cir.1981)).

In *Farmers*, the Minnesota Supreme Court held that when allegedly fraudulent acts were committed jointly by a bank and its officer-directors, the bank could not, under the terms of a fidelity bond similar to the one at issue in this case, recover attorney's fees it incurred in defending a lawsuit brought against it for damages stemming from those acts. The court distinguished between those cases where bank employees act without the knowledge of the bank that the acts are fraudulent or otherwise dishonest and those cases where the bank does possess such knowledge. In the former cases, there would be coverage under the terms of the bond covering employee dishonesty, and the insurer would therefore have a duty to defend. In the latter cases, the dishonest acts are better characterized as being committed by the bank rather than its employees; therefore, there is no coverage under the employee dishonesty provision of the bond and no duty to defend. 242 N.W.2d at 843–44. The court recognized that to hold otherwise would result in the bank's being allowed to insure itself against its own dishonesty. The Minnesota Supreme Court quite logically concluded that to construe a fidelity bond in such a manner would be illogical and contradictory at best. *Id.* 242 N.W.2d at 843. *See also Levey v. Jamison*, 82 F.2d 958, 960 (4th Cir.1936) ("[a] policy of fidelity insurance does not insure an employer

against his [or her] own fraud") (citations omitted).

The factual situation in this case is quite similar to the factual situation in *Farmers*. In both cases the bank was sued by customers alleging fraudulent acts by the bank and its employees. In both cases, taking the allegations of the complaint as true, the bank may be charged with the knowledge that the fraudulent acts had been committed. In *Farmers*, the bank had knowledge because active members of the bank's board of directors were aware of, and participated in, the acts that were alleged as fraudulent. 242 N.W.2d at 843. In the present case, taking the allegations of the Seaton complaint as true, the bank may be charged with knowledge of the acts complained of because Gjerdingen, for all practical purposes, was the bank.

In ruling that the allegations of the Seaton complaint did not state a claim which, if proved, would have "constitute[d] a valid and collectible loss ... payable under" Coverage 12 of the bond, the district court reasoned that the bank did not suffer any loss either through reliance on the allegedly forged documents or because of the allegations of the Seaton complaint. *Slip op.* at 5. We do not agree with the district court's reasoning; however, it was correct in the result that it reached.

Coverage 18 provides for recovery of attorney's fees and court costs incurred in defending lawsuits, the allegations of which, if proved, would "constitute a valid and collectible loss ... payable under the terms of [the] bond." There is no requirement that the insured suffer any loss other than the aforementioned attorney's fees before the provisions of Coverage 18 become applicable.

Appellants are not entitled to recover their attorney's fees and costs through the application of Coverage 12 for much the same reason as the one that prevents their recovery under Coverage 1. The Seaton complaint alleged that the bank and Gjerdingen forged Seaton's signature on the mortgage and promissory note. If the allegations of the Seaton complaint were true, the bank could not have relied in good faith

on the documents because it would have been a party to the forgery. Further, as we have stated elsewhere in this opinion, Gjerdingen's control over the bank causes the allegations against him to be read as allegations against the bank. *See Farmers*, 242 N.W.2d at 843–44. The all risk forgery provision is meant to protect the bank against losses incurred in relying in good faith on forged documents presented to it by third parties, not for losses incurred because of forgeries perpetrated by the bank.

Because the allegations of the Seaton complaint did not state a claim which, if proved, would have "constitute[d] a valid and collectible loss ... payable under the terms of [the] bond" under either Coverage 1 or 12, appellants are not entitled to recover under Coverage 18 the attorney's fees and court costs they incurred in defending the Seaton lawsuit.

Accordingly, the judgment of the district court is affirmed.