9 F.3d 51
 24 Envtl. L. Rep. 20,456
 BITUMINOUS CASUALTY CORPORATION, an Illinois corporation,
Plaintiff-Appellee,
v.
TONKA CORPORATION, a Minnesota corporation, Defendant-Appellant,
v.
BITUMINOUS CASUALTY CORPORATION, The Travelers Insurance
Company, North River Insurance Company, Great American
Insurance Company, Industrial Indemnity Company, Zurich
Insurance Company, United States Fire Insurance Company,
Mission National Insurance Company, Twin City Fire Insurance
Company, Counter-Defendants-Appellees.
 No. 92-3187.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 10, 1993.
Decided Nov. 12, 1993.
Rehearing Denied Dec. 21, 1993.
 
 Mary R. Vasaly, Minneapolis, MN, argued (David F. Herr, Mallory K. Mullins and Anna L. Korinko, on the brief), for defendant-appellant.
 Thomas E. Peterson and Leon R. Erstad, Minneapolis, MN, argued, for appellees.
 Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 Tonka Corporation ("Tonka") appeals the district court's[1] grant of summary judgment declaring that Bituminous Casualty Corporation and several other insurance companies (collectively, "the Insurers") have no duty to defend or indemnify Tonka for its costs incurred in a proceeding initiated by the Minnesota Pollution Control Agency ("MPCA") to remedy groundwater contamination at Tonka's facility in Mound, Minnesota. The district court held that this contamination is not the result of an "occurrence" within the meaning of the Insurers' comprehensive general liability ("CGL") policies, and also is excluded from coverage by the pollution exclusion contained in many of the policies. We affirm.
 
 I.
 
 2
 Tonka manufactured metal toys at the Mound facility from 1955 until 1984. Prior to painting the toys, Tonka removed oil and grease by passing them through a vapor bath of trichloroethylene (TCE), a common solvent. This process generated a liquid waste of TCE and oil. After the 1950's, Tonka recovered the TCE in a still and reused it, leaving residue oil and stillbottom sludge that was stored in 55-gallon drums for disposal.
 
 
 3
 In 1985, an engineering study revealed that the groundwater surrounding Tonka's plant contains significant concentrations of TCE and other solvents. Acting under the Minnesota Superfund Act, Minn.Stat. Ch. 115B, the MPCA then issued a formal request that Tonka define and implement a remedial action plan to protect the environment from further releases of these hazardous substances. Tonka notified the Insurers and requested that they defend Tonka in this administrative enforcement proceeding. Bituminous and Travelers defended Tonka for over a year, but then commenced this action seeking a declaratory judgment that they have no duty to defend or indemnify under their CGL policies. Tonka counterclaimed for a declaration that each of the Insurers must defend and indemnify the company under those policies.
 
 
 4
 The CGL policies provide coverage for damages Tonka is legally obligated to pay because of property damage caused by an "occurrence," which is defined as "an accident, including injurious exposure to conditions, which results ... in bodily injury or property damage neither expected or intended from the standpoint of the insured." Most of the policies issued after 1972 contain a "pollution exclusion," which bars coverage for property damage arising out of the discharge of contaminants or pollutants unless the discharge was "sudden and accidental."
 
 
 5
 The district court granted the Insurers' motion for summary judgment, concluding that the groundwater contamination resulted from Tonka's "ongoing and routine disposal of TCE on its site," that Tonka "knew or should have known that there was a substantial probability that this release of TCE would cause property damage," and that the resulting damage was therefore not caused by an occurrence within the meaning of the Insurers' CGL policies. In addition, the court held that coverage is barred under those policies that contain a pollution exclusion because "there was nothing abrupt about the disposal of TCE at the Tonka site."
 
 II.
 
 6
 On appeal, Tonka argues that the district court erred both in granting summary judgment on the fact-intensive issue of whether the property damage in question was caused by an occurrence, and in interpreting the pollution exclusion. We review the district court's decision to grant summary judgment and its interpretation of state law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); Gumersell v. Director, Fed. Emergency Mgt. Agency, 950 F.2d 550, 553 (8th Cir.1991).
 
 
 7
 With regard to the pollution exclusion, we have recently held that in order to qualify for the "sudden and accidental" exception to that exclusion under Minnesota law the insured must show that its release of a contaminant was abrupt. See Bureau of Engraving v. Federal Ins. Co., 5 F.3d 1175, 1177 (8th Cir.1993). After careful review of the record, we conclude that the district court correctly held that the pollution exclusion applies to Tonka's release of TCE and other solvents into the groundwater at its plant, and that Tonka's ongoing and routine on-site disposal of these wastes was not "sudden" as a matter of law. See Sylvester Bros. Dev. Co. v. Great Central Ins. Co., 503 N.W.2d 793, 797 (Minn.App.1993); Krawczewski v. Western Cas. & Sur. Co., 506 N.W.2d 656 (Minn.App.1993). Accordingly, the district court properly granted summary judgment declaring that Tonka's claims are not covered under any policy containing the pollution exclusion.
 
 
 8
 However, not all the policies at issue contain a pollution exclusion. Therefore, like the district court, we must also address the "occurrence" issue. The question is whether the contamination of the groundwater under Tonka's plant resulted in property damage "neither expected nor intended from the standpoint of the insured." This is an objective standard; it turns upon whether the damage "should have been expected" by the insured. Bituminous Cas. Corp. v. Bartlett, 307 Minn. 72, 240 N.W.2d 310, 313 (1976). Under Minnesota law, "the word 'expected' denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions." Auto-Owners Ins. Co. v. Jensen, 667 F.2d 714, 720 (8th Cir.1981). This standard "involves a higher degree of certainty than reasonable foreseeability." Sylvester Bros. Dev. Co. v. Great Central Ins. Co., 480 N.W.2d 368, 372 (Minn.App.1992). See also Continental Western Ins. Co. v. Toal, 309 Minn. 169, 244 N.W.2d 121, 125 n. 3 (1976).
 
 
 9
 The Insurers presented substantial evidence that Tonka is responsible for the presence of TCE and other solvents in the groundwater under its plant. Tonka routinely dumped liquid wastes on site during the 1950's, before it installed a still to recover TCE. In later reports to the environmental agencies, Tonka described these wastes as "degreaser oils," "still-bottom sludges," and "degreasing solvents." Moreover, Tonka's dumping of liquid wastes on-site did not end upon installation of the still. An employee testified that he dumped barrels of liquid waste in the Tonka parking lot in 1978 because it saved the company $500 per barrel in disposal costs. Another employee testified that he regularly dumped stillbottom sludge and a mixture of TCE and water in the same parking lot, practices that continued from the 1960s until the plant was closed. Tonka knew or should have known that these wastes contained TCE--employees testified that the barrels of stillbottom sludge smelled like TCE, and Tonka later admitted to the EPA that samples of its stillbottom sludge contained TCE. Throughout this period, despite Tonka's efforts to recover and reuse TCE, its plant operations consumed hundreds of thousands of gallons of the chemical each year.
 
 
 10
 The Insurers also presented evidence that Tonka knew or should have known that dumping these liquid wastes would likely cause property damage. Tonka's employees were well aware that exposure to TCE and other solvents "could kill you." Two employees testified that Tonka's dumping killed trees on the site. Studies in the 1950's and earlier reported hazards involved with TCE, and a Tonka employee recalled receiving warnings from management at that time to be very cautious with barrels containing the chemical.
 
 
 11
 Tonka argues that there are genuine fact issues concerning whether it knew the liquid wastes it dumped on site contained TCE and whether the TCE contamination might have been caused by accidental spills. However, we agree with the district court that Tonka failed to present hard evidence to support these hypotheses. There was no evidence that Tonka ever reported any accidents or spills to the MPCA or its insurers, and several Tonka supervisors testified that they were unaware of any TCE spills at the plant. The isolated spills that Tonka was able to document could not plausibly account for the high concentrations of TCE in the soil and groundwater at the site.
 
 
 12
 Tonka also argues that there is a genuine fact issue as to whether it knew that TCE would harm the environment. However, we think the summary judgment record fully supports the district court's resolution of this issue:
 
 
 13
 The full effects of TCE were not documented, nor did governmental regulations cover TCE, until some time after Tonka's on-site TCE disposal in the 1950's. The record establishes, however, that Tonka knew at the time of its disposal that there was a substantial probability TCE was a harmful substance.
 
 
 14
 In these circumstances, we agree with the district court that Tonka knew or should have known that there was a substantial probability that its on-site dumping of liquid wastes containing TCE and other solvents would cause property damage. Therefore, the damage that did result was "expected" as a matter of Minnesota law, and there was no covered "occurrence" under the Insurers' policies. See Farmers Union Oil Co. v. Mutual Serv. Ins. Co., 422 N.W.2d 530, 533 (Minn.App.1988) (no coverage for damage to crops resulting from a known misapplication of herbicide because the damage was "expected"); Bartlett, 240 N.W.2d at 313-14 (no duty to defend claim against contractor when the damage caused was "highly expectable from his standpoint"); Sage Co. v. Insurance Co. of No. Amer., 480 N.W.2d 695, 697-98 (Minn.App.1992) (no duty to defend wrongful termination claim because the termination was "expected, intended, and designed"). Likewise, the Insurers have no duty to defend Tonka in the MPCA proceeding--"there is no duty on the part of the insurer to defend 'when it is established by the insurer that the facts are such that there is no coverage under the policy for any resulting liability.' " State Farm Fire & Cas. Co. v. Williams, 355 N.W.2d 421, 424-25 (Minn.1984).
 
 
 15
 We have carefully considered Tonka's other contentions and find them to be without merit. The judgment of the district court is affirmed.
 
 
 
 [1]
 The HONORABLE DIANA E. MURPHY, Chief Judge of the United States District Court for the District of Minnesota