19 F.3d 1267
 William DONOVAN, Kevin Vandermay, Mark Vandermay, Francis
Vandermay, Plaintiffs,
v.
FARMERS HOME ADMINISTRATION, Defendant-Appellee,
Anne E. Putnam, Defendant-Appellant,
Putnam Ranches, Inc., and Maran, Inc., Defendants.
 No. 93-1168.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 11, 1993.
Decided March 28, 1994.
 
 Wally Eklund, Gregory, SD, argued, for appellant.
 Robert Mandel, Asst. U.S. Atty., Rapid City, SD, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, and LOKEN, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 Plaintiffs graze livestock on ranch property located in Bennett and Todd Counties, South Dakota. The ultimate question in this interpleader action is whether plaintiffs should pay grazing fees to the current owner of that property, appellant Anne E. Putnam, or to appellee Farmers Home Administration ("FmHA"), which claims a mortgage lien. The issue on appeal is whether FmHA's junior mortgage lien survived a foreclosure sale and Putnam's exercise of the owner's right to redeem. Though the interests of a federal agency lender are at issue, South Dakota law governs. See 28 U.S.C. Sec. 2410(c). The district court[1] granted summary judgment in favor of FmHA. Donovan v. United States, 807 F.Supp. 560 (D.S.D.1992). We affirm.
 
 I.
 
 2
 The holder of a mortgage senior to FmHA's commenced a foreclosure action in state court and obtained an $85,784.46 judgment in its favor. The Bennett County Circuit Court ordered that the property be sold at public auction, that the sale proceeds be applied to the judgment and the costs of sale, and that "[a]ny surplus proceeds remaining from the sale ... shall be deposited with the Court." The order expressly provided that, after the foreclosure sale, FmHA's interest in the property would be "forever barred and foreclosed ... except for the rights of redemption provided by" federal and state law.
 
 
 3
 To protect its junior lien, FmHA purchased the property at the foreclosure sale. FmHA bid and tendered $488,000. However, after paying the judgment and the costs of sale, the Bennett County Sheriff returned the surplus proceeds of $399,845.18 to FmHA, rather than depositing that surplus with the court. FmHA also paid $60,732.49 for past due real estate taxes on the property.
 
 
 4
 On the last day of the statutory redemption period, the owner of the property, Putnam Ranches, Inc., transferred its right of redemption to Putnam,[2] who then tendered to the Sheriff $164,049.29--the net amount FmHA had paid as foreclosure sale purchaser. The Sheriff issued Putnam a certificate of redemption, and FmHA sued in state court to have her redemption set aside because she tendered $164,049.29 instead of FmHA's original bid of $488,000. The state court denied FmHA relief, concluding that Putnam as the owner's successor in interest "adhere[d] to the procedures for redemption as set forth in South Dakota Redemption Statutes."
 
 
 5
 In this action, it is conceded that Putnam has title to the property by reason of her redemption. She argues that FmHA's lien was extinguished by the foreclosure, even though FmHA acted to protect its interest by purchasing the property at the foreclosure sale, and even though FmHA received nothing other than its out-of-pocket expenses when Putnam redeemed. There are no material disputed facts; the issue turns on the proper interpretation of the relevant South Dakota statutes.
 
 
 6
 The district court granted FmHA summary judgment, concluding that, under S.D. Codified Laws Ann. Sec. 21-52-24 and Rist v. Andersen, 19 N.W.2d 833 (S.D.1945), FmHA's lien was revived by Putnam's redemption. We review the district court's grant of summary judgment and its interpretation of South Dakota law de novo. See Bituminous Casualty Corp. v. Tonka Corp., 9 F.3d 51, 52 (8th Cir.1993). It is undisputed that, if FmHA's lien was revived by Putnam's redemption, the district court properly ordered plaintiffs to pay the grazing fees to FmHA.
 
 II.
 
 7
 Under South Dakota law, the property owner or judgment debtor, their successors in interest, or the holder of any junior lien may protect its interest by redeeming the property following a foreclosure sale. See Sec. 21-52-5. The owner or the owner's successor in interest has the final right to redeem. See Sec. 21-52-7. When the owner properly exercises this final right of redemption, the "effect of the sale is terminated." Sec. 21-52-24.
 
 
 8
 The question raised in this case is what effect the owner's redemption has on a junior lienholder, such as FmHA, whose lien is not paid out of the redemption proceeds. In Rist, the South Dakota Supreme Court observed:
 
 
 9
 A redemption by the mortgagor or his successor in interest terminates the effect of the sale and restores to him, free of the incumbrance of the mortgage foreclosed, his property, SDC 33.2104, and leaves the property subject to junior liens.
 
 
 10
 19 N.W.2d at 835 (emphasis added). Although the passage was dictum in Rist, Putnam does not suggest that any subsequent South Dakota case has questioned this definitive statement of South Dakota foreclosure law by the highest court of the State. And the principle has been adopted in most States that have comparable redemption statutes.[3] As the court said in Kaiser v. Mansfield, 160 Cal.App.2d 865, 325 P.2d 865, 871 (1958):
 
 
 11
 These statutes were designed to protect the redemption rights of various parties, not to relieve the judgment-debtor from the payment of his just debts. When a redemption is made by a creditor the junior lien which is wiped out does not represent a debt which is owed by the redeeming creditors. There would be no justice, however, in permitting a judgment-debtor to redeem from the first execution sale and thereby cancel and wipe out his obligation on other execution liens covering debts which he also owes.
 
 
 12
 Rist was decided under a prior South Dakota statute that provided, "If the debtor redeem, the effect of the sale is terminated, and he is restored to his estate." S.D.Code of 1939, Sec. 33.2104. Section 21-52-24 is the successor to Sec. 33.2104.[4] Both statutes contain the critical language: "the effect of the sale is terminated" if the owner redeems. South Dakota courts "assume that the legislature in enacting a provision has in mind previously enacted statutes relating to the same subject matter." State v. Feiok, 364 N.W.2d 536, 539 (S.D.1985). Thus, we agree with the district court that Rist is controlling authority in construing the successor statute, Sec. 21-52-24. Compare Watertown Equip. Co. v. Norwest Bank Watertown, 830 F.2d 1487, 1491 (8th Cir.1987), cert. denied, 486 U.S. 1001, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988).
 
 
 13
 On appeal, Putnam argues vigorously that Rist is bad policy. Even if we agreed with that contention, and we do not, the task of a federal court under 28 U.S.C. Sec. 2410(c) is to apply the South Dakota statutes as construed by the South Dakota Supreme Court. The district court properly performed that task in holding that, under Sec. 21-52-24 as construed in Rist, FmHA's junior lien was revived by Putnam's exercise of the owner's right to redeem.
 
 
 14
 Putnam makes two additional attacks on the district court's decision. First, she argues that FmHA should be deemed to have lost its lien because it did not attempt to redeem the property. This argument is without merit. "Junior lienholders can protect their claims either by bidding at the foreclosure sale or redeeming in a deliberate manner." Farmers PCA, 374 N.W.2d at 658. Here, as high bidder at the foreclosure sale, FmHA had no reason to redeem, and after Putnam redeemed, Sec. 21-52-7 barred FmHA from usurping her exercise of the owner's final right of redemption. On this record, we think it clear that FmHA neither waived nor slept on its rights.
 
 
 15
 Second, invoking res judicata and collateral estoppel, Putnam argues that FmHA's interest in the property was finally extinguished by the provision in the foreclosure order that its lien is "barred and foreclosed" except for its rights of redemption. For these doctrines to apply, "the issue decided in the former adjudication [must be] identical to the present issue." In re Guardianship of Janke, 500 N.W.2d 207, 209 (S.D.1993) (res judicata); see Staab v. Cameron, 351 N.W.2d 463, 465 (S.D.1984) (collateral estoppel). Applying Rist, the district court held that FmHA's lien was revived when Putnam exercised the owner's final right of redemption. That issue plainly was not determined in the foreclosure order, which predated both the foreclosure sale and the redemption.
 
 
 16
 The state court order denying FmHA's motion to set aside Putnam's redemption is far more relevant to this proceeding than the earlier foreclosure order. FmHA argued to the state court that Putnam had failed to tender the amount required by another section of the redemption statutes, Sec. 21-52-14. That statute provides that "any redemptioner" may redeem from the foreclosure sale purchaser by paying "the purchase price" plus any amounts the purchaser has paid for taxes, interest, and so forth. In addition,
 
 
 17
 If the purchaser is the holder of a lien ... other than that under which sale was made, which is superior to the lien of the redemptioner, the redemptioner shall likewise pay the amount of the additional lien....
 
 
 18
 The state court concluded that Putnam's redemption complied with this statute. Thus, it necessarily concluded (i) that FmHA's "purchase price" was the net amount retained by the Sheriff, and not the $488,000 bid by FmHA;[5] and (ii) that the above-quoted sentence of Sec. 21-52-14 did not obligate Putnam as a redeeming owner to pay "the additional lien" of FmHA as purchaser. This interpretation of Sec. 21-52-14 only makes sense in the context of Rist 's prior interpretation of Sec. 21-52-24--a redeeming owner, as opposed to a redeeming creditor, need not pay the lien of the junior lienholder-purchaser because, under Rist, that lien is revived when the owner redeems. In this regard, we note that the lien of a junior lienholder who has purchased at the foreclosure sale is the only issue before us. We do not decide whether redemption by the owner would also revive other junior liens, liens which may well have been "under water" at the time of the foreclosure sale. We leave that question for another day.
 
 
 19
 The judgment of the district court is affirmed.
 
 
 
 [1]
 THE HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota
 
 
 [2]
 There was an interim transferee, Maran, Inc., an entity owned by members of the Putnam family. Maran redeemed the property and conveyed it to Putnam by quitclaim deed. To simplify matters, this opinion will treat Putnam as the redeeming party
 
 
 [3]
 See Newman v. American Nat'l Bank, 780 P.2d 336, 340 (Wyo.1989); Scott v. Scott, 179 Ill.App.3d 489, 128 Ill.Dec. 154, 156, 534 N.E.2d 174, 176 (1989); Farmers Prod. Credit Ass'n v. McFarland, 374 N.W.2d 654 (Iowa 1985). See generally Annot., Mortgages: Effect on Subordinate Lien of Redemption by Owner, 56 A.L.R. 4th 703, 714, Sec. 3 (1987)
 
 
 [4]
 See 1949 S.D.Laws Ch. 142, Secs. 7(a), 18
 
 
 [5]
 Putnam notes that the surplus portion of FmHA's $488,000 bid was not deposited with the state court as required by the foreclosure order and by Sec. 21-47-18. However, a similar deposit requirement did not affect the court's decision in Rist. See S.D.Code of 1939, Sec. 33.2016(4). The purpose of the deposit requirement is not to define the redemption "purchase price," but to give the foreclosure court control over any surplus until it can resolve priority questions among junior lienholders and the property owner